## RACINE COUNTY BANK VS. KEEP and others.

In an action on a promissory note, parol evidence of an agreement between the makers and the payee, at the time the note was executed, that it might be paid in bank notes, is inadmissible to vary the legal effect of the note.

In such an action the defendants may show, by way of counter-claim, that the plaintiff (which was a bank), promised, at the time of the execution of the note, to redeem in gold, at a certain discount, within a specified time, the bills of another bank which were used in discounting said note, but had refused so to redeem upon due presentment made, such proof not tending to contradict the terms of the note, but relating to a distinct collateral undertaking of the plaintiff made upon a sufficient consideration.

The defendants in such action, within the specified time, and after the plaintiff had refused to redeem portions of said bills presented by employees of the defendants, to whom the same had been paid out, offered at the counter of the plaintiff, to take up their note by paying at the agreed rate of discount, so many of said bills as they then had, and the remainder in current money, but the plaintiff refused the offer, alleging that it was under no obligation to take back such bills. *Held*, that the defendants were excused from any formal presentment of the bills for redemption, the conduct and language of the plaintiff amounting to a waiver of such presentment.

*Held*, also, that proof of the agreement by the plaintiff to receive said bills in payment of the note, though inadmissible to vary the legal effect of the note, might be considered in explanation of the conduct of the defendants, and by way of excusing the failure to make a formal demand of redemption.

The defendants, by taking away such bills, upon the plaintiff's refusal to redeem, charged themselves with their safe keeping until the agreement to redeem should be performed, whether by means of legal proceedings or otherwise. They must therefore produce them on the trial and offer them to the plaintiff before they can have the benefit of the counter-claim, unless they show them to be worthless.

So far as the defendants offered to return the bills within the time specified, they are entitled to their set-off; beyond that, they are not.

APPEAL from the Circuit Court for *Racine* County.

This was an action on a promissory note for $2000, made by the defendants to the plaintiff. The case is stated in the opinion of the court. The circuit court instructed the jury as follows : " 1. That if they believed from the evidence, that at the time said note was made and discounted, the cashier, Northrop, agreed with the defendants to take back

said bills and pay gold for them at the rate of one and a half per cent. discount, then the defendants had a right to return said bills even after the failure of said bank, to the plaintiff for such redemption or in payment of their said note; and that the plaintiff was bound to redeem them or take them in payment of said note, notwithstanding the bank issuing the bills had failed after the discount and before the bills were offered for redemption. 2. That it was not necessary that a tender of said notes should have been pleaded, or that they should have been paid into court, or produced at the trial and offered to the plaintiff, in order to defeat a recovery on said note; but if they believed the testimony of the witness *Clover* [one of the defendants] in regard to his offering to pay said note at Racine on the week succeeding said discount, and that the bank refused to accept the same, then that no further offer on their part was necessary, and that it was not necessary that a tender should have been pleaded, or that said bills should have been brought into court and offered to the plaintiff on the trial. 3. That if they believed that said defendants paid out any portion of said money which did not come back to them, and which they did not redeem, then in that case, the plaintiff would be entitled to recover against the defendants for so much of said amount of $2000 as they had not redeemed, with interest from the maturity of said note at the rate of ten per cent., unless the jury also find that said money was utterly worthless at the time said note was discounted."

Verdict for the defendants, and judgment accordingly; a motion to set aside the verdict having been overruled.

*Cary & Pratt* for appellant:

The pretended agreement in regard to the payment of the note would destroy its character as a negotiable promissory note; and oral evidence should not have been admitted thus to vary the legal effect of the written instrument. *Gregory vs. Hart,* 7 Wis., 532; *Cooper and Staines vs. Tappan,* 4 id., 362, 369; *Erwin vs. Saunders,* 1 Cow., 249; *Payne vs. Ladue,* 1 Hill, 116; *Allen vs. Furbish,* 4 Gray, 504; *Columbia vs. Amos,* 5 Ind., 184; *Burge vs. Dishman,* 5 Blackf., 272; *Isaac vs. Elkins,* 11 Vt., 679; Chitty on Contracts, 102, 103;

Edwards on Bills, 135 et seq., and cases there cited. 2. The instructions were erroneous: (1.) Because they refer to said agreement, of which there was no legal evidence. (2.) Because if such an agreement had been made when the Memphis bank was in good credit and its bills current, it would not bind the plaintiff to take such bills after the failure of the bank. (3.) Because under the instruction that it was not necessary for the defendants to make a tender of said bills in their pleadings, nor to produce them at the trial, the plaintiff's recovery would have been defeated, although said bills had at the time of the trial been current at their par value. A tender must always be kept good, and the fact that it had been made and refused before suit was brought, would only prevent the plaintiff from recovering costs. (4.) The words " unless the jury also find that said money was utterly worthless at the time said note was discounted," should have been omitted from the third instruction, it appearing that the defendants disposed of $682 of these bills as money, and received full value therefor. 3. Even under the instructions given, the jury should have found for the plaintiff for the difference between the amount of the note and the sum of $1318, with interest at 10 per cent. The court therefore erred in refusing to set aside the verdict.

*Mat. H. Carpenter* for respondents:

1. This was not an attempt to contradict the note, but to show that it had no validity for want of consideration. In an action between the original parties to a promissory note, it is a good defense to show want or failure of consideration. Story on Prom. Notes, chap. 5, and notes; Story on Bills, §§ 193–4, and notes; *Thomas vs. Thomas & Co.*, 7 Wis., 476. The evidence given at the trial for the defendants, showed that the bills received by them were worthless when received. The real consideration of the note was the promise of the plaintiff to pay gold when those worthless bills should be returned to the bank, and the plaintiff having failed to do so, the consideration of the note utterly failed. 2. There was no error in the instructions to the jury. The *first* is merely the proposition that failure of consideration is a good defense. The *second* is to be taken in connec-

tion with the *uncontroverted* fact that these bills were worthless when received and ever after. The *third*, so far as it goes, is for the plaintiff, and the verdict under it is conclusive that the bills were worthless when received. 3. The bills being thus valueless, a tender was unnecessary ; otherwise if they had been of any value. *Perley vs. Balch*, 23 Pick., 283 ; *Sanford vs. Dodd*, 2 Day, 437.

January 2.      *By the Court*, DIXON, C. J. This was an action of assumpsit upon a promissory note, commenced before the passage of the Code. The plea was the general issue, to which was attached a notice of special matter, which set up in substance that the note was given for a discount made at its date ; that no other money or consideration was paid for it by the plaintiff than bills of the Farmers' & Merchants' Bank of Memphis, Tennessee ; that the bills were worthless, and the bank that issued them bankrupt ; that at the time they were received by the defendant, and at the time of discounting the note, the plaintiff agreed that it would, at any time within ninety days thereafter, whenever requested, redeem the bills at its counter in gold, at a discount of one and a half per cent.; that the defendants took them in pursuance of such agreement, and paid them out to their employees ; that the employees presented them for redemption as above, and the plaintiff refused to redeem them, and in consequence the defendants were compelled to do so ; that they afterwards, and within ninety days, presented them at the plaintiff's counter and demanded the note ; and that the plaintiff refused to receive them, and the defendants still held them ready to be delivered, &c.

The defense thus set forth was substantially proved at the trial by oral testimony. It was likewise proved that the bank at the same time agreed that the note might be paid with the same kind of bills with which it was discounted. To the introduction of this testimony, and each and every part of it, the plaintiff objected, on the ground that it tended to vary and control the legal effect of the note. On the other side, it was insisted that such was not its effect, but that its tendency was to show a failure of consideration, and

therefore it was admissible. It was admitted under objection and exception by the plaintiff. The same positions are taken here. It appears to us that neither is entirely correct. That of the plaintiff is partially so. So far as the proof shows an agreement on the part of the bank to receive payment of the note in the bills of the Farmers' & Merchants' Bank, it is clearly a contradiction of the terms of the note, and incompetent as a defense. The rule of evidence is well settled, that all contemporaneous verbal agreements are merged in the written contract, and that oral evidence of them cannot be received to vary or contradict it. The note, upon its face, calls for payment in specie, and to show that it was agreed that it might be paid in any other manner, plainly contravenes it. But the other branch of the agreement or defense set up in the notice, is clearly not liable to this objection. It is that the plaintiff promised that it would, within ninety days thereafter, whenever requested, redeem the bills at its counter in gold at a discount of one and one half per cent. Evidence of this part of the agreement certainly has no tendency to modify or alter the terms or effect of the note itself. It is evidence of a distinct, independent, collateral undertaking on the part of the bank, founded upon a sufficient consideration. The bills of the Farmers' & Merchants' Bank were uncurrent—at least, their currency and value were doubtful. The defendants were desirous of procuring a loan, and applied to the plaintiff for that purpose. They were informed that they could be accommodated, provided they would receive those bills. To this they replied that the bills were uncurrent and suspicious, the bank itself in bad repute, and that if they received them they would be useless. They were told in answer, that if they would do so, and pay them out to their employees, the bank would redeem them in the manner and within the time stated; and upon this understanding, they took them and delivered their note. Can there be any doubt that this constitutes a good consideration for the promise to redeem, and that it may be enforced, so far as the defendants complied with its conditions? We think not. The promise to redeem, and the promise to receive in payment of the note, are so far distinct

and separate, that we can see no difficulty in enforcing the former and leaving the latter out of the case altogether. So far, therefore, as the evidence tended to show an agreement to redeem, and a compliance by the defendants with its conditions, it was competent and proper. We do not, however, think that its admissibility is properly put upon the ground of a failure of consideration. It appears to us to be more in the nature of a "counter-claim," as defined by the statute. It is "a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action." The consideration of the note did not fail. The defendants received just what they bargained for. They took the bills relying on the promise of the plaintiff to make them good in gold at the rate specified; and it is this promise which they now seek to enforce by way of set-off against the amount due upon the note.

The only question, therefore, is as to the contract itself, and the amount of the bills which were tendered to the bank for redemption in pursuance of it. One of the defendants testifies that before the expiration of the ninety days, he went to the bank with $1,318 of the bills of the Farmers' & Merchants' Bank, to which he added enough of other currency to pay the note, and offered it in payment, and demanded the note. He further testifies that the cashier refused to receive it, on the ground that there was no arrangement by which the bank was to take back the bills with which the note was discounted. We have had some doubt whether this can be deemed a sufficient presentation of that amount of bills for redemption; but upon consideration of the whole transaction, we have concluded that it can. It was a part of the arrangement that the note might be paid by these bills, and though, by the rules of evidence, the defendants are precluded from showing it as a legal defense to the note, yet we think that it may be considered in explanation of their conduct, and by way of excusing a direct and formal presentation for redemption and demand of the gold. Under the circumstances, we think reason and justice require that such offer should be considered equivalent to it. The reply of

June Term, 1860.

By Racine Co. Bk. v. Keep et al.

the cashier, too, furnishes an additional excuse. He denied that there was any agreement to take back the money. After this a demand of the gold would have been useless. By this denial the tender was effectually waived.

If therefore, upon a future trial, it shall be found that there was such an agreement to redeem, and such an offer of the bills, the defendants will be entitled to have the amount so offered, less the one and one half per cent. discount, deducted from the amount due upon the note. To the amount thus to be deducted there should also be added interest from the date of the presentation and refusal. But this allowance can only be made upon the production by the defendants of the bills offered, and a delivery or offer of them to the plaintiff, unless they shall undertake to show, and shall establish to the satisfaction of the court and jury, that the bills are worthless. If the latter fact be established, their non-production can be no injury to the plaintiff, but otherwise it is entitled to them. The contract itself implies that the plaintiff was to have them. It was to redeem, and if the bills are of any value, their return may be insisted upon. The defendants, by taking them away after refusal, voluntarily charged themselves with their safe keeping until such time as the agreement should be performed, whether by means of legal proceedings or otherwise.

It follows from what we have already said concerning the nature of the transaction, that the judgment must be reversed, and a new trial awarded. The circuit judge instructed the jury that if they found that the bills were worthless at the time of the discount, it was immaterial whether or not they were presented for redemption, according to the terms of the agreement. This, we think, was erroneous. According to their own showing, the defendants took the bills relying upon the agreement to redeem. In order to avail themselves of that agreement, they must show that they observed it on their part. So far as they presented the bills for redemption, according to its terms, they are entitled to their set-off; but beyond that they are not, and must pay the note. But failing to comply with the conditions upon which the redemption was to be made, they waived the perform-

ance by the bank, and accepted the bills as good for the amount which they purported to represent.

Judgment reversed, with costs, and a new trial awarded.